***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner DeLuca.
 ***********
The pleadings and evidence of record establish the following:
 ISSUES 1. Did Defendant offer Plaintiff suitable employment after his injury?
 2. If Defendant offered Plaintiff suitable employment, whether Defendant has met *Page 2 
their burden to show that Plaintiff was terminated for misconduct, that the misconduct would have resulted in the termination of a non-disabled employee, and that the termination was unrelated to Plaintiff's compensable injury.
 3. Whether Plaintiff has shown he was disabled through medical evidence.
 4. Alternatively, if Defendant has met their burden, whether Plaintiff has shown that his inability to find other employment at a wage comparable to that he earned prior to his injury was due to his work-related disability.
 5. What additional indemnity and/or medical compensation is Plaintiff entitled to receive?
 ***********
The parties entered into the following Findings of Fact and Conclusions of Law as:
 STIPULATIONS
1. On May 9, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. At all relevant times the employment relationship existed between Plaintiff and the Defendant-Employer.
2. On May 9, 2007, Plaintiff sustained a compensable back injury that was accepted by the Defendant as a medical only claim. Plaintiff continued working for the Defendant until Friday, August 21, 2007.
3. At all relevant times Coca-Cola Bottling Company Consolidated was Self-Insured with Gallagher Bassett Services Inc. as its Third-Party Administrator.
4. The parties stipulated the Employee-Plaintiff's average weekly wage at the time of the injury was $823.80.
 *********** *Page 3 
The following documents were entered into the record by stipulation as:
 EXHIBITS
1. Stipulated Exhibit 1: a Pretrial Agreement;
2. Stipulated Exhibit 2: Industrial Commission forms;
3. Stipulated Exhibit 3: two pay stubs, a transitional return to work policy and a product list;
4. Stipulated Exhibit 4: discovery;
5. Stipulated Exhibit 5: job function analysis;
6. Stipulated Exhibit 6: medical records;
7. Stipulated Exhibit 7: work search documentation;
8. Stipulated Exhibit 8: personnel file; and
9. Stipulated Exhibit 9: payment history from the Employment Security Commission.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff, David Bruce Odum, was 55-years old, having been born on January 8, 1953. Upon leaving high school in the 12th grade, Plaintiff went to work for a beer distributor delivering beer. He remained in the beer delivery business for approximately 20 years. Plaintiff's work in the beer delivery business required him to bend, climb, lift and stoop, and lift up to 150 pounds.
2. In 1992, Plaintiff began working for the Defendant, delivering Coca-Cola products for about 15 years. At Coca-Cola, his work delivering Coca-Cola products was similar to the *Page 4 
beer delivery business in that it required bending, stooping, lifting up to 50 pounds and climbing up on a truck. Plaintiff has no work history other than drink delivery work. Plaintiff has received no other vocational training and does not own or operate a computer. Throughout his entire career at Coca-Cola, his job functions remained essentially unchanged.
3. Plaintiff's regular working routine started at six o'clock in the morning, "count[ing] the truck out" to make sure the load was correct and then delivered to his assigned accounts, which could range from 20 to 30 depending upon the amount of business at any one given time and the amount of product purchased. Plaintiff's delivery truck was a tractor-trailer, which required that he have a commercial driver's license; CDL, class A. At each account Plaintiff would exit the truck, raise side bay doors, climb onto the truck and remove the product to be delivered and place it on a hand truck. Plaintiff would deliver the product by hand truck, weighing anywhere from a few pounds to as much as 250 pounds, into the account and stock it on the floor, a shelf or in a refrigerated drink cooler. This delivery process could require Plaintiff to place up to 50 pounds anywhere from on the floor to overhead, depending upon the product storage location in each store. Delivering these drink products required significant bending, stooping, climbing and lifting up to 50 pounds throughout the entire work day.
4. On May 9, 2007, Plaintiff was moving four metal premix drink canisters weighing approximately 50 pounds each on a hand truck down some steps when he felt a sharp pain in his mid to lower back. He released the hand truck, the product fell off, and he sat down. After resting for a bit, Plaintiff completed his work day and reported the injury to management upon returning to the Defendants' warehouse. Supervisor Duane Fairfax completed an incident report and instructed Plaintiff to report to Medac Corporate Health for treatment. *Page 5 
5. On May 10, 2007, Plaintiff was seen at Medac by Mr. Dan Shapiro, PA-C for complaints of back pain. Plaintiff's weight was 426 pounds. Mr. Shapiro felt that Plaintiff had back strain and prescribed pain medications. Plaintiff was advised he could return to restricted duty with no stooping, bending, crouching or climbing and no lifting over ten pounds, but he was released to drive.
6. Plaintiff reported back to work, where he spoke with Mr. Allen Clark, the acting general manager. Mr. Clark returned Plaintiff to work with instructions to only drive the truck, stating that he did not want Plaintiff to "mess up his back any more." Mr. Clark provided other employees known as route specialists and trainees to deliver the product to each location, while Plaintiff remained in the truck.
7. On May 25, 2007, Plaintiff returned to Mr. Shapiro for a follow-up visit. Mr. Shapiro advised Plaintiff that he could return to full duty on June 1, 2007 with no restrictions.
8. On June 1, 2007, Plaintiff returned to Mr. Shapiro with continued complaints of back pain. Mr. Shapiro referred Plaintiff to a back specialist. Plaintiff was advised he could return to restricted duty with no stooping, bending, crouching or climbing, and no lifting over fifteen pounds, but he was released to drive.
9. On June 4, 2007, Richard Youmans came to work at the Defendants' Wilmington facility. Mr. Clark was Richard Youmans' superior.
10. On June 27, 2007, Plaintiff was seen by Mr. Armando Gonzalez, P.A. to Dr. Francis Pecoraro, for lower back pain. X-rays of Plaintiff's lumbar spine showed some degenerative changes along the facet joints and some minor degenerative disc disease. Mr. Gonzalez felt Plaintiff had lumbar strain and sprain or possibly central disk rupture without radicular symptoms, and he recommended treating Plaintiff with Medrol Dosepak. Plaintiff was *Page 6 
released to return to work with work restrictions of no stooping, bending, crouching or climbing and no lifting over fifteen pounds.
11. On July 6, 2007, Plaintiff was seen by Mr. Gonzalez for complaints of continued back pain. Plaintiff reported that the Medrol Dosepak did not relieve his pain. He also reported no radicular symptoms. Mr. Gonzalez recommended a lumbar MRI. Plaintiff was advised to continue light duty work.
12. The Defendant-Employer has a four-step written corrective action policy leading to termination. On July 16, 2007, Plaintiff was "written up" on a corrective action form of the Defendant for allegedly sleeping in his truck. This corrective action was issued for an occurrence on July 10, 2007, while the assistant that accompanied him was in the store delivering an order. Plaintiff testified that he was having trouble with sleep and pain due to his injury. The Plaintiff's hand written note on the form reflects this in a notation that he would "plan to get more rest, no pain pill in the morning."
13. On July 23, 2007, Dr. Steven Crawford reported that Plaintiff's lumbar MRI showed neural foraminal stenosis that was most pronounced at L5-S1 and disc desiccation most pronounced from L2 through L5. Dr. Crawford noted there was no significant canal stenosis. The MRI also demonstrated a disc bulge at L2-L3 with some encroachment on the thecal sac, and L5-S1 was noted to have a far left lateral disc protrusion. This protrusion was contacting both L5 nerve roots. Dr. Pecoraro was of the opinion that the protrusion "can cause a lot of pain in the back. It can also cause a lot of leg pain."
14. On July 27, 2007, Plaintiff returned to Mr. Gonzalez following his lumbar MRI. Mr. Gonzalez noted that Plaintiff's lumbar MRI showed degenerative disc disease at multiple levels, some bulging discs, and minor disc herniation at L5-S1, and he recommended epidural *Page 7 
steroid injections and physical therapy. Plaintiff was advised to continue with light duty work restrictions.
15. On August 21, 2007, Plaintiff was terminated by Youmans while still on light duty, in a second corrective action for again allegedly sleeping in his truck for a violation alleged to have occurred on August 11, 2007.
16. Plaintiff denied the allegation that was reportedly witnessed by a member of Defendants' management. Plaintiff had continued to experience difficulty with his back pain and sleep. While the trainees were working accounts, the stops would last anywhere from 15 minutes to one hour. During this time Plaintiff was waiting idle in the truck. While sitting and waiting he may have had his head back against the seat providing an appearance of sleeping, but he was not sleeping. The Full Commission finds this testimony credible.
17. Defendant-Employer did not comply with its four-step corrective action procedure.
18. Plaintiff's termination was related to his work injury in that Plaintiff would not have been sitting in the truck with nothing to do, in continuing pain and under medication for extended periods of time absent the work injury.
19. On September 5, 2007, Dr. Pecoraro administered a bilateral transforaminal epidural steroid injection at L5-S1. Plaintiff was released to return to work with restrictions to light duty.
20. On October 5, 2007, Plaintiff was seen by Ms. Jill Billups, PA-C to Dr. Pecoraro, for a follow-up visit. Plaintiff stated that relief from the epidural steroid injection lasted a few days. Ms. Billups recommended facet blocks. *Page 8 
21. Defendant formally admitted this claim as a compensable specific traumatic incident on an Industrial Commission Form 60 filed on November 11, 2007.
22. On November 15, 2007, Dr. Pecoraro administered L3-L4, L4-L5 and L5-S1 bilateral facet blocks.
23. On December 14, 2007, Plaintiff was returned to Ms. Billups following his facet blocks. Plaintiff reported that the facet blocks gave him relief for about two weeks. Ms. Billups recommended bilateral lumbar radiofrequency thermocoagulation, followed by physical therapy.
24. On January 23, 2008, Dr. Pecoraro administered lumbar radiofrequency thermocoagulation at L3, L4, L5 and the sacral ala on the left.
25. On February 6, 2008, Dr. Pecoraro administered a lumbar radiofrequency thermocoagulation at L3, L4, L5 and the sacral ala on the right. Dr. Pecoraro noted that other than medication, there was nothing further he could provide Plaintiff. Dr. Pecoraro noted Plaintiff's back condition would not improve in the near future because of his size.
26. Dr. Pecoraro assigned Plaintiff permanent restrictions to light duty. In his deposition, Dr. Pecoraro explained that he meant by that statement that Plaintiff should not lift more than 20 pounds. He should not carry out any repetitive bending, stooping and twisting. He shouldn't climb any ladders or occasional stairs. He further opined that Plaintiff could not have worked full, regular duty at Coca-Cola since beginning his treatment because of the requirement to lift weights up to 50 pounds.
27. On March 20, 2008, Plaintiff returned to Dr. Pecoraro for a follow-up appointment. At that time, Dr. Pecoraro removed Plaintiff from work. *Page 9 
28. On April 21, 2008, Plaintiff was seen by Ms. Billups for a follow-up visit. Ms. Billups felt that Plaintiff was still temporarily totally disabled, and she recommended physical therapy.
29. On June 18, 2008, Plaintiff returned to Ms. Billups. Ms. Billups noted that Plaintiff's pain had stabilized with the medications and exercises and she encouraged Plaintiff to continue to lose weight.
30. On September 16, 2008, Plaintiff returned to Dr. Pecoraro for a follow-up appointment concerning his chronic back pain. Dr. Pecoraro noted Plaintiff was morbidly obese and weighs over 400 pounds. Dr. Pecoraro noted his diagnosis of severe degenerative disk and joint disease of the lumbar spine, chronic. Dr. Pecoraro further noted Plaintiff had stable pain control and function. He recommended Plaintiff continue to exercise and try to lose weight.
31. Dr. Pecoraro certified Plaintiff as temporarily totally disabled through December 12, 2008. As of that time, Dr. Pecoraro felt Plaintiff had permanent limited light duty restrictions which would involve no repeated bending, twisting, stooping, positional changes, limited stair climbing, no ladder climbing, no lifting more than 20 pounds and no driving of commercial vehicles. Dr. Pecoraro further opined that the work injury of May 9, 2007 was the cause of Plaintiff's back injury, pain and need for treatment.
32. Following his termination, Plaintiff received unemployment benefits at the rate of $361.00 per week to the date of the hearing, although he may have missed payments for several weeks.
33. Following his termination, the evidence of record establishes that Plaintiff regularly sought employment from many potential employers. Plaintiff was unsuccessful in his attempts to obtain employment. His work injury and his resulting physical restrictions combined with his age, *Page 10 
education and singular experience in product delivery contributed to his inability to obtain employment.
34. Defendant has not proven by the greater weight of the evidence that Plaintiff was terminated for his misconduct unrelated to Plaintiff's compensable injury.
35. Plaintiff has shown by the greater weight of the evidence that as a result of his May 9, 2007 compensable injury, he is incapable of earning his pre-injury wages.
34. On May 10, 2007, when Plaintiff was placed on light duty, his hourly pay was reduced from $21.95 per hour to $18.72 per hour. Under the terms of the transitional return to work policy, Plaintiff could work no more than 40 hours per week. Defendant did not pay temporary partial disability benefits. When Plaintiff was rendered totally disabled by Dr. Pecoraro on March 20, 2008, Defendant did not undertake to pay temporary total disability benefits.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. On May 9, 2007, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-29.
2. Plaintiff's average weekly wage on May 9, 2007 was $823.80, yielding a compensation rate of $549.23. N.C. Gen. Stat. § 97-2(5).
3. The Defendants' filing of a Form 60 is an admission of compensability. See Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 159, 542 S.E.2d 277, 281, disc. reviewdenied, 353 N.C. 729, 550 S.E.2d 782 (2001). Where a plaintiff's injury has been proven to be compensable, there is a presumption that the additional medical treatment is directly related to the compensable injury. See Reinninger v. Prestige Fabricators,Inc., 136 N.C. App. 255, 259, 523 S.E.2d 720, *Page 11 
723 (1999); Parsons v. Pantry, Inc.,126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). Thereafter, the Defendant must rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury.Reinninger, 136 N.C. App. at 259, 523 S.E.2d at 723. The record is devoid of any evidence rebutting the presumption that all medical treatment received by the Plaintiff for his back injury is not directly related to the compensable injury. N.C. Gen. Stat. §§ 97-2(19) 97-25.
4. Plaintiff is not entitled to medical treatment for his weight issues as the medical evidence establishes that Plaintiff's obesity is not related to his compensable injury by accident. N.C. Gen. Stat. § 97-25.
5. Defendants' contention that Plaintiff constructively refused suitable employment when he violated Defendants' code of conduct by sleeping while on duty is not well taken. When an employee, who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated, employer seeking to bar compensation for temporary partial or total disability must first show that employee was terminated for misconduct or fault, unrelated to compensable injury, for which nondisabled employee would ordinarily have been terminated; if employer makes such a showing, employee's misconduct will be deemed to constitute a constructive refusal to perform work provided and consequent forfeiture of benefits for lost earnings, unless employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to injury is due to work-related disability. Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). TheSeagraves test requires Defendant to prove: (1) employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a non-disabled employee; and (3) the termination was unrelated to the employee's compensable injury. *Page 12 McRae v. Toastmaster, Inc.,358 N.C. App. 488, 597 S.E. 2d 695 (2004). The greater weight of the evidence establishes that Plaintiff's termination was directly related to Plaintiff's compensable injury as Plaintiff's sleeping while on duty was precipitated by his pain the medications he was taking for his compensable injuries. Additionally, Defendant terminated Plaintiff after two acts of alleged misconduct rather than following its stated procedures requiring four acts of misconduct. The failure to follow its stated disciplinary policy with an employee with the years of service Plaintiff has with Defendant also circumstantially supports the conclusion that Plaintiff was terminated because of his work related injury by accident as opposed to the nature and scope of the alleged misconduct. Seagraves, 123 N.C. App. At 228, 472 S.E.2d at 397.
6. Assuming arguendo that Defendants' termination was not related to Plaintiff's injury by accident, Plaintiff has proven by the greater weight of the evidence that he remained unable to perform the work assigned by the Defendant or find comparable work as a direct result of his work-related injuries, he would be entitled to benefits. McRae,358 N.C. App. 488, 597 S.E. 2d 695. The medical evidence establishes that Plaintiff was only able to perform light duty activities primarily limited to driving his employer's delivery truck until March, 2008. Plaintiff actively sought employment but was unsuccessful because of his age, education, and the scope of his physical restrictions. On March 20, 2008, and continuing, the medical evidence establishes that Plaintiff was certified as temporarily totally disabled from any employment. N.C. Gen. Stat. § 97-32.
7. Plaintiff has established disability under N.C. Gen. Stat. §§ 97-2(9), 97-29 97-30. From May 10, 2007 through August 21, 2007, Plaintiff was temporarily partially disabled. N.C. Gen. Stat. § 97-30. Plaintiff has been temporarily totally disabled from August 22, 2007 and continuing. N.C. Gen. Stat. § 97-29. *Page 13 
8. Defendant is entitled to a credit for the unemployment insurance benefits paid to Plaintiff. N.C. Gen. Stat § 97-42.1.
9. Defendant is responsible for paying all medical expenses incurred, or to be incurred in the future, by Plaintiff for reasonable and necessary medical treatment for his back injury. N.C. Gen. Stat. § 97-25.
 ***********
The forgoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Defendant shall pay all medical expenses incurred, and to be incurred in the future, by Plaintiff for reasonably necessary medical care.
2. Defendant shall pay Plaintiff compensation for temporary partial disability beginning May 10, 2007 through August 21, 2007 and temporary total disability at the rate of $549.23 per week beginning August 22, 2007 and ongoing until further order of the Commission subject to the credit for unemployment insurance benefits. All accrued benefits shall be paid in a lump sum, subject to an attorney's fee provided for hereinafter.
3. A reasonable Attorney's fee of twenty-five percent (25%) of the disability compensation due Plaintiff under paragraph two of this award is approved for Plaintiff's counsel. From past due benefits to the date of this Award, Defendant shall deduct the attorney fee approved from the sums owed to the Plaintiff and paid to Plaintiff's counsel in one lump sum. From future benefits, Defendants shall deduct every fourth disability payment to Plaintiff and pay the same directly to Plaintiff's counsel.
4. Defendant shall pay the costs. *Page 14 
This the __ day of January 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1